IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,                     No. 1:15-cr-00172-HZ-1
                                                   1:22-cv-00106-HZ

                          Plaintiff,          OPINION & ORDER

        v.

EMMANUEL OLUWATOSIN KAZEEM,

                          Defendant.

Gavin W. Bruce
U.S. Attorney's Office
405 E 8th Ave #2400
Eugene, OR 97401

        Attorney for Plaintiff

Megan E. McVicar
Hoevet Olson, PC
1000 SW Broadway #1740
Portland, OR 97205

        Attorney for Defendant

HERNÁNDEZ, District Judge:

Defendant Emmanuel Kazeem moves for relief from his judgment under 28 U.S.C. § 2255. Am. Mot. to Vacate, Set Aside, or Correct Sentence, ECF 437. He raises twelve individual grounds and one cumulative ground. *Id.* All thirteen grounds allege ineffective assistance of counsel. *Id.* For the following reasons, the Court denies the motion.

## BACKGROUND

On May 7, 2015, Defendant and four others were indicted for one count of Conspiracy to Commit Mail and Wire Fraud in violation of 18 U.S.C. § 1349 (Count 1), thirteen counts of Mail and Wire Fraud in violation of 18 U.S.C. §§ 1341 and 1343 (Counts 2-14); and thirteen counts of Aggravated Identity Theft in violation of 18 U.S.C. § 1028A(c) (Counts 15-27). ECF 3. Defendant's four co-defendants and named alleged co-conspirators were Oluwatobi Rueben Dehinbo, Lateef Aina Animawun, Oluwaseunara Temitope Osanyinbi, and Oluwamuyiwa Abolad Olawoye. *Id.* at 3-4. The alleged object of the conspiracy was to obtain stolen personally identifiable information ("PII") and use that PII to prepare and electronically file fraudulent federal and state tax returns and obtain fraudulent refunds. *Id.* at 4. Such a scheme is commonly known as a Stolen Identity Refund Fraud ("SIRF"). Def. Br. 2, Ex. 1 at 2-3, ECF 444-1.

The indictment followed an investigation by Internal Revenue Service ("IRS") Special Agent Colleen Anderson. Def. Br. Ex. 4 (affidavit of probable cause). The investigation began when, in May 2013, an individual reported to the IRS that false federal and Oregon state tax returns had been filed on her behalf. *Id.* at 7-8. Investigators traced the transactions associated with this victim and other victims to an individual named Curtis Pethley in Illinois. *Id.* at 9. They searched Pethley's home and found approximately 150 prepaid debit cards similar to those that had been used to obtain fraudulent tax refunds. *Id.* at 10. When investigators interviewed

Pethley, he "admitted to purchasing prepaid debit cards for an identity theft scheme he believe[d] [was] being run out of Lagos, Nigeria since at least 2011." *Id.* Investigators traced email and instant message ("IM") communications between Pethley and his Nigerian contact, known as queen_jennn, and identified Defendant and his four co-defendants as individuals with whom queen_jennn communicated about identity theft. *Id.* at 10-12. The investigation identified Defendant as associated with the account philipe1212@yahoo.com. *Id.* at 15.

Defendant retained attorney Michael Levine to represent him during pretrial proceedings and at trial. At status conferences between July 2015 and July 2016, Magistrate Judge Clarke granted continuances at the request of all defendants. ECF 61, 90, 97, 103. Counsel reported on October 31, 2016, that he was ready for trial. ECF 104. Judge Aiken granted another continuance in November 2016. ECF 111. In February 2017, Judge Aiken denied Defendant's motion to sever. ECF 135. At a status conference in March 2017, the firm trial date in July 2017 was set. ECF 136. On July 10, 2017, Mr. Levine moved to dismiss the Indictment for a Speedy Trial Act violation. ECF 178, 179. Judge Aiken denied the motion. ECF 195. The case proceeded to trial, which lasted five days. Neither Defendant nor any of his co-defendants testified. Mr. Levine's strategy at trial was to argue that someone had hacked Defendant's computer, and that individual, rather than Defendant, participated in the SIRF scheme. Mr. Levine cross-examined the Government's witnesses and called one of them, Jason Scalzo, in his case-in-chief. *See* Trial Tr. 715:21-719:10 (direct examination of Scalzo by defense counsel). Defendant was convicted of nineteen counts, including the conspiracy count, five counts of mail fraud, four counts of wire fraud, and nine counts of aggravated identity theft. Verdict, ECF 217. All other counts were dismissed. *Id.*

At the sentencing phase, Defendant continued to be represented by Mr. Levine. The Government sought a sentence of 24 years. Gov. Sent. Mem. 2, ECF 286. Mr. Levine argued that Defendant should receive a sentence of no more than 12 years. Def. Sent. Mem. 1, ECF 289. He did not contest the four-level enhancement for a leader or organizer, instead arguing for a downward variance. *Id.* at 10-47; Gov. Resp. Ex. 1 ("Levine Decl.") ¶ 11, ECF 452-1. The probation office's Presentence Report ("PSR") found that the intended loss from the conspiracy was $91 million. PSR ¶ 48, ECF 285. This was higher than the $26 million figure the Government proved at trial. Sent. Tr. 58:25-59:5, ECF 331. Mr. Levine argued that the Government's calculations were unreliable and that the court should use the actual loss rather than the intended loss. Def. Sent. Mem. 2-6. He argued that if the court used intended loss, it should use the figure of approximately $26 million that the Government had proved at trial. *Id.* at 5-6. Mr. Levine retained an expert, who testified that he could not verify the Government's numbers. Sent. Tr. 40:25-41:3. Judge Aiken found that Defendant intended to fraudulently procure $26 million. *Id.* at 92:10-20. She arrived at a guideline range of 210 to 262 months. *Id.* at 93:3-4. She sentenced Defendant to 180 months. *Id.* at 98:20. Defendant had already spent three years in custody awaiting trial, which Judge Aiken considered during sentencing. *Id.* at 97:14-16.

Mr. Levine represented Defendant on appeal. Defendant argued that Judge Aiken erred by (1) denying his motion to dismiss for a violation of the Speedy Trial Act, (2) failing to make particularized findings about the criminal activity for which Defendant could be held responsible in determining his offense level, (3) failing to determine whether the intended loss figures were reliable, (4) failing to determine how much loss Defendant actually intended to cause, and (5) ordering restitution to be made immediately in a lump sum. *United States v. Kazeem*, No. 18-30145, 2019 WL 2526888 (Defendant's Opening Brief) (9th Cir. June 11, 2019). The Ninth

Circuit affirmed on all grounds except with respect to when restitution would be due. *United States v. Kazeem*, 803 F. App'x 144, 145 (9th Cir. 2020). Defendant was denied a panel rehearing and rehearing en banc. ECF 387. His petition for a writ of certiorari was denied on April 26, 2021. ECF 408, 412. On January 18, 2022, Defendant filed a pro se Motion to Vacate, Set Aside, or Correct his sentence. ECF 414. Appointed counsel filed an amended motion on September 26, 2022. The statute of limitations was tolled by stipulation. ECF 420, 428.

**STANDARDS**

**I.      Section 2255 Motion Standards**

Section 2255 permits "[a] prisoner in custody under sentence of a court established by Act of Congress" to move the sentencing court to vacate, set aside, or correct the sentence on the basis that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). To warrant relief, a defendant must demonstrate that an error of constitutional magnitude "had substantial and injurious effect or influence" on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now that *Brecht's* harmless error standard applies to habeas cases under section 2255, just as it does to those under section 2254.").

Under § 2255, the defendant is entitled to a hearing in which the court determines the issues and makes findings of fact and conclusions of law, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "The standard for granting an evidentiary hearing [under § 2255] entails assuming the truth of [the defendant's] factual allegations." *United States v. Leonti*, 326 F.3d 1111, 1121 (9th

Cir. 2003). When faced with conflicting sworn accounts from a defendant and his trial attorney, a district court must hold an evidentiary hearing if the defendant's version of the facts would entitle him to relief. *United States v. Reyes-Bosque*, 624 F. App'x 529, 530 (9th Cir. 2015) (finding that district court erred in holding that the defendant's claim was self-serving because § 2255(b) "imposes no requirement of independent corroboration, and a declaration is not inherently unbelievable merely because it is self-serving"). A district court may summarily dismiss a § 2255 motion based on a facial review of the record "only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'" *United States v. Withers*, 638 F.3d 1055, 1062-63 (9th Cir. 2011) (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)). "Therefore, 'a hearing is mandatory whenever the record does not affirmatively manifest the factual or legal invalidity of the petitioner's claims,' and failure to grant one in such a circumstance is an abuse of discretion." *Reyes-Bosque*, 624 F. App'x at 530 (quoting *Baumann v. United States*, 692 F.2d 565, 571 (9th Cir. 1982)).

## II.    Ineffective Assistance of Counsel Standards

To show that he or she has received constitutionally deficient assistance of counsel, a defendant must prove (1) that counsel's assistance was deficient, and (2) that the deficient performance prejudiced the defense. *Premo v. Moore*, 562 U.S. 115, 121 (2011). To prove the deficiency of counsel's performance, the defendant must show counsel made errors so serious that his "'representation fell below an objective standard of reasonableness'" under prevailing professional norms. *Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir. 2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). The court must inquire "whether counsel's assistance was reasonable considering all the circumstances" at the time of the assistance. *Strickland*, 466

U.S. at 688. "In assessing whether counsel's performance was deficient, courts must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and make every effort 'to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Hibbler v. Benedetti*, 693 F.3d 1140, 1149 (9th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689). Ultimately. the defendant's "burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).

"To satisfy the prejudice prong under *Strickland*, a defendant must show 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Saesee v. McDonald*, 725 F.3d 1045, 1048 (9th Cir. 2013) (quoting *Strickland*, 466 U.S. at 694). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting 466 U.S. at 694). "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112. The court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant[.]" *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

## DISCUSSION

The Court concludes that none of the grounds on which Defendant relies shows that he may be entitled to relief.[1] Defendant has not shown that his trial counsel performed deficiently, nor has he shown that any deficiency was prejudicial to the outcome. Because the record shows

---

[1] Because the Amended Motion covers the arguments raised in Defendant's pro se Motion, the Court addresses only the Amended Motion.

that the arguments and allegations underlying Defendant's asserted grounds for relief lack merit, the Court denies Defendant's petition without a hearing.

## I.      Defendant's Request to Expand Record

Defendant asks the Court to expand the record to include six exhibits filed concurrently with his brief. Def. Br. 1. The exhibits are a U.S. Department of Justice publication about stolen identity tax refund fraud (Ex. 1), a U.S. Department of Justice Tax Division directive delegating to the U.S. Attorney the authority to investigate and charge such frauds (Ex. 2), a publication explaining certain terminology related to theft of PII (Ex. 3), the Affidavit of Colleen Anderson in support of a search warrant in this case (Ex. 4), Defendant's Declaration in Support of his Petition (Ex. 5), and a copy of Government Exhibit 187 (Ex. 6).

Rule 7 of the Rules Governing Section 2255 Cases provides that "[i]f the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition." Rule 7(a). "The materials that may be required include letters predating the filing of the petition, documents, exhibits, and answers under oath to written interrogatories propounded by the judge. Affidavits may also be submitted and considered as part of the record." Rule 7(b). "The judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness." Rule 7(c). The Government did not object to the exhibits in its response brief. The Court has considered Defendant's exhibits in reviewing the record and evaluating Defendant's argument.

## II.     Ground One: Language Barrier

In Ground One, Defendant argues that Mr. Levine's failure to obtain the assistance of an interpreter when conferring with Defendant during plea negotiations, trial preparation, and sentencing constituted ineffective assistance. Def. Br. 12. After representing Defendant, a

Nigerian and native speaker of Yoruba, without an interpreter, Mr. Levine requested a Yoruba

interpreter for trial. Def. Trial Br. 1, ECF 165. In his trial brief, Mr. Levine wrote:

> Although his understanding of English is very good, it is not perfect. Furthermore,
> he speaks with a very heavy accent that is difficult for many (including his counsel)
> to understand. During the heat of trial, communication between the defendant and
> his counsel will be seriously impaired if not altogether impossible. Therefore, a
> Yoruba interpreter is necessary.

*Id.* Judge Aiken discussed the request for an interpreter at the pretrial conference on July 13,

2017. Pretrial Conf. Tr., ECF 334. The court's interpreter coordinator stated that after a language

assessment:

> [W]e determined that the defendant's understanding of English was such that the
> principal concern was whether Mr. Levine would be able to confer and understand
> his client in the heat of the trial, and also whether during the trial there may be a
> point where the defendant's understanding would break down in the more complex
> nature of the language of a trial.

*Id.* at 6:19-25. Mr. Levine confirmed that he expected the trial to proceed in English with the

interpreters on standby, because he had been able to communicate with Defendant but "always

having difficulty understanding him because of his strong accent[.]" *Id.* at 7:11-14.

In his declaration, Mr. Levine states:

> [A]lthough he had a strong accent, I understood him perfectly well when his speech
> cadence was slow. At times I did ask the Defendant to slow down the cadence of
> his speech and at times I asked him to repeat what he was saying. When he did so,
> I was able to understand him well.

Levine Decl. ¶ 3. He states that arranged for an interpreter at trial "because events move at a fast

pace." *Id.* He states, "I do not recall needing to use the interpreter to communicate with the

Defendant during trial. Throughout trial, I would check with the Defendant to confirm that he

was able to understand the testimony. Each time he responded that he was able to understand the

testimony." *Id.*

Defendant states that he met in person with Mr. Levine "approximately ten times prior to trial" and also spoke with him by telephone "a number of times." Kazeem Decl. ¶ 5. He states:

> During our conversations, Mr. Levine sometimes asked me to talk slowly because I have a strong accent but never used an interpreter with me, never asked me to write down what I told him so he could understand, and never said that he was unable to understand what I was telling him.

*Id.* ¶ 6. Defendant nowhere states that he did not understand Mr. Levine or any proceedings in his case.

The foregoing establishes that Mr. Levine struggled to understand Defendant if he spoke too quickly, but he understood Defendant when he spoke more slowly. The parties agree that Mr. Levine sometimes asked Defendant to speak slowly. This was a reasonable way for him to address any comprehension barrier between himself and his client in meetings, at pretrial hearings, and at sentencing. It was reasonable to request an interpreter as a backup measure for trial given the fast pace of trial compared to other stages of the case. Counsel was not ineffective in requesting an interpreter only at trial.

## III.    Grounds Two Through Six: Investigation and Trial Strategy

Grounds two through six challenge counsel's review of emails and IMs produced by the Government in discovery and use or non-use of those emails and IMs at trial. Defendant challenges both the failure to present evidence showing the existence of multiple conspiracies and the failure to object to evidence tying him to the charged conspiracy.

### A.    Legal Standard

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691.

"[I]neffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case." *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir. 1986).

The Supreme Court and Ninth Circuit have held that failing to read the client's case file constitutes ineffective assistance under some circumstances. *Rompilla v. Beard*, 545 U.S. 374, 383-84 (2005) (holding that counsel was deficient at sentencing phase in capital murder case for failing to even look at defendant's prior conviction file when the prosecution advised it would be relying on documents contained in the file); *Vega v. Ryan*, 757 F.3d 960, 967-68 (9th Cir. 2014) (holding that counsel was ineffective for failing to review defendant's file, in which prior counsel had documented exculpatory evidence, and failing to call witness at trial who would have testified to victim's recanting of accusations against defendant). Other investigatory decisions may also constitute deficient performance. *E.g.*, *Staten v. Davis*, 962 F.3d 487, 495-96 (9th Cir. 2020) (holding that counsel performed deficiently in failing to investigate testimony of five witnesses that gang members, rather than defendant, committed the charged murders, and noting that such evidence fit within the defense theory).

For actions at trial, there is a "strong presumption" that "the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotations omitted). Failure to present evidence that might favor the defendant at trial generally will not prejudice the defendant where the evidence against the defendant is overwhelming. *See United States v. Harden*, 846 F.2d 1229, 1232 (9th Cir. 1988) (holding that counsel was not ineffective in failing to call witness where the evidence against the defendant was overwhelming). And to show that the failure to object to the admission of evidence constituted ineffective assistance, the defendant must show that "had his counsel objected, 'it is reasonable that the trial court would have granted

[the objection] as meritorious.'" *Boyde v. Brown*, 404 F.3d 1159, 1173 (9th Cir.), *as amended on reh'g*, 421 F.3d 1154 (9th Cir. 2005) (quoting *Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir. 1999)).

    B.    Analysis

        i.    Ground Two: Review of Discovery

Defendant argues that counsel did not "obtain or adequately review or understand the discovery" in the case. Am. Mot. 13. Discovery consisted primarily of around 250,000 emails and IMs between and among Defendant, his co-defendants, and others. Trial Tr. 423:1-5, ECF 327. As evidence that counsel did not adequately review the discovery, Defendant points to other co-defendants' requests for continuances, while his own counsel advocated for a speedy trial. Def. Br. 18. Mr. Levine states that he did review and understand the discovery. Levine Decl. ¶ 4. He also retained a former FBI agent to review the discovery. *Id.* Both Mr. Levine and the agent concluded that the Government had evidence of the conspiracy as charged. *Id.* Defendant points to no evidence in the discovery that counsel should have reviewed that would have created a reasonable probability of a different outcome. Thus, even if counsel performed deficiently, Defendant has not shown prejudice.

        ii.    Ground Three: Multiple Conspiracies Evidence

Defendant argues that counsel failed "to review, investigate, prepare, or present readily available evidence that the single conspiracy alleged in the Indictment was actually multiple, separate conspiracies." Am. Mot. 13. Instead, counsel's strategy was to argue that the Government could not prove that Defendant was philipe1212. Levine Decl. ¶ 4. Mr. Levine states, "At first, the Defendant strongly denied that he was *philipe1212*; however, as more discovery was produced, the Defendant, belatedly, just before or during trial, admitted to me that

he was in fact *philipe1212*." *Id.* Mr. Levine then changed his strategy to argue that someone else had hacked Defendant's email account and was working with the other co-defendants. *Id.* He states that he discussed trial strategy with Defendant and Defendant agreed with his approach. *Id.* Defendant does not contest these statements.

Counsel may be ineffective for failing to adequately investigate the case even where the defendant is "actively obstructive" to the investigation. *Rompilla*, 545 U.S. at 381. In *Rompilla*, counsel's investigation consisted of talking to family members and reviewing some expert reports, none of which were "particularly helpful" to a mitigation case at the sentencing phase. *Id.* Given this, combined with knowledge that the prosecution intended to quote from the record of the defendant's prior conviction, counsel performed deficiently by failing to review the defendant's file from his prior conviction, even though the defendant sent counsel on false leads. *Id.* at 383-84, 389-90. This case is not like *Rompilla*. Mr. Levine developed a strategy in consultation with Defendant, which was upended by Defendant's belated admission to counsel, forcing a last-minute adjustment in strategy. Particularly under these circumstances, counsel did not perform deficiently.

Further, Mr. Levine was not deficient in choosing a defense theory focused on proof of identity rather than separate conspiracies. He states, "I did consider a defense of separate conspiracies, but as a matter of strategy" he concluded that it was better to argue that the Government could not prove that Defendant was philipe1212. Levine Decl. ¶ 5. Mr. Levine came to this conclusion for three reasons: (1) "there was evidence of an overall conspiracy"; (2) "I did not think I could persuasively argue that the Defendant had entered into various conspiracies with the co-defendants to rip off millions of dollars from the government, but just not the one that was charged"; and (3) "I believed I would need the Defendant's testimony to plausibly argue

that defense, but he refused to testify." *Id.* Mr. Levine also states that he "discussed the pluses and minuses" of Defendant testifying and that Defendant was reasonable in refusing to testify "given that the government had substantial impeachment evidence." *Id.* Mr. Levine concluded that the jury would be unlikely to accept the multiple conspiracies argument without Defendant's testimony. *Id.*

In light of the evidence in this case, Mr. Levine's conclusions are not unreasonable. It is undisputed that Defendant was in regular contact with his co-defendants because he was selling them stolen identities to use in a SIRF scam. Mr. Levine also states that Defendant told him that he showed his co-defendants how the scam would work. Levine Decl. ¶ 4. Defendant replies that the evidence only shows that he instructed other individuals, who were not co-defendants. Def. Reply 2-4, ECF 455. But evidence at trial showed that on at least one occasion, Defendant instructed his brother to go to Dehinbo ("tobi") for assistance in carrying out the scheme. Gov. Tr. Ex. 73; Trial Tr. 568:6-16, ECF 328. And the parties agree that Defendant benefited from his arrangement with his co-defendants because it allowed him to purchase PII in bulk. Levine Decl. ¶ 4; Def. Reply 4. Defendant concedes that this allowed him to reduce his costs but argues that "his interest ended there and he received no benefit from the success or failure of the co-defendants' fraudulent schemes." Def. Reply 4-5. However, emails between Defendant and Olawoye show that Olawoye sent Defendant sender-receiver information for funds put on prepaid debit cards from fraudulent tax filings. Gov. Tr. Exs. 89, 90; Trial Tr. 621:3-624:20. To successfully put on the separate conspiracies defense, Mr. Levine would have needed to overcome this evidence, and further convince the jury that although Defendant repeatedly sold PII to his co-defendants, and received a cost savings from doing so, and was running a different

SIRF scheme, he was not involved in a conspiracy with his co-defendants. Without Defendant's testimony, this case would have been very difficult to make.

Even if Mr. Levine's choice of strategy were deficient, there is not a reasonable probability that the outcome would have been different if he had chosen a defense theory based on separate conspiracies. Counsel's failure to investigate may constitute ineffective assistance where the State has a very weak case against the defendant. *Johnson v. Baldwin*, 114 F.3d 835, 840 (9th Cir. 1997). In *Johnson*, counsel failed to investigate the defendant's alibi although the State's case was "extremely weak," as it relied only on the victim's testimony, which none of the physical evidence supported. *Id.* at 838. The defendant's alibi was also weak, and he testified at trial. *Id.* at 838-39. The Ninth Circuit concluded that had counsel investigated and concluded that the alibi lacked merit, the two viable strategies would have been for the defendant to (1) testify that he was present but that the alleged crime did not occur (a strategy a co-defendant successfully employed), or (2) choose not to testify, "thereby depriving the jury of the adverse credibility determination that probably tipped the balance against him." *Id.* at 840. This case is unlike *Johnson* because here the Government had a strong case against Defendant. *See also Frimpong v. MacDonald*, No. CV 12-06995-JVS DFM, 2014 WL 1779492, at *21-*23 (C.D. Cal. May 5, 2014) (holding that failure to call three alibi witnesses at trial was not prejudicial because of "extensive evidence" against the defendant). Defendant has not shown that counsel's performance was deficient or than any deficiency prejudiced him.

    iii.  Ground Four: Litigation of Co-Conspirator Hearsay

Defendant argues that "[t]rial counsel's failure to competently litigate the admissibility of hearsay in emails offered as co-conspirator hearsay statements and failure to object to the admission of hearsay statements of non-conspirators during trial" constituted ineffective

assistance. Am. Mot. 14. In his trial brief, Mr. Levine argued that co-conspirator hearsay is inadmissible unless the government meets the standards of Federal Rule of Evidence 801(d)(2)(E) outside the hearing of the jury. Def. Trial Br. 6-7. During the Rule 104 hearing, Mr. Levine objected to the admission of statements from the philipe1212 account because the Government had not shown that philipe1212 was Defendant and had not met its burden to show that Defendant was a conspirator. Trial Tr. 198:10-17, ECF 326. After the Government summarized its evidence that philipe1212 was Defendant, Judge Aiken stated that there was evidence to tie Defendant to the identity. *Id.* at 199:7-11. Judge Aiken also stated, "I don't think there's any doubt that there's a link to show that there was in fact a conspiracy in this particular case." *Id.* at 199:14-16.

Thus, while Mr. Levine objected to the evidence on a different basis than the one Defendant argues he should have, he did make the objection. Judge Aiken's response shows that the alternative objection Defendant now advocates was not likely to have been meritorious. Similarly, Mr. Levine states that he did not object to the evidence at trial because he "believed the government easily met the standard and that additional objection or contrary arguments would be futile." Levine Decl. ¶ 6. In light of Judge Aiken's statement at the Rule 104 hearing, this was not an unreasonable belief. Counsel was not ineffective in failing to object to hearsay statements of Defendant's co-defendants at trial. *See James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994) (holding that counsel was not ineffective for failing to move to strike a special circumstance finding where the motion would have been futile).

    iv.    Ground Five: Litigation of Emails with Nigerian Terms

In his Amended Motion, Defendant argued that "[t]rial counsel's failure to object to or litigate the admissibility of law enforcement officers' summary testimony explaining or

interpreting emails and instant messages containing conversations, statements or phrases in Nigerian English or Nigerian Pidgin or Nigerian slang" constituted ineffective assistance. Am. Mot. 14. The Government correctly points out that Defendant's Brief does not discuss this ground or point to specific testimony to which Mr. Levine should have objected. Gov. Resp. 17. Defendant's Reply does not address this ground either. Defendant has not shown deficient performance or prejudice.

            v.        Ground Six: Separate Conspiracies Defense

Defendant argues that "[t]rial counsel's failure to identify and use emails, instant messages and other evidence provided by the government in the discovery to show that the named co-defendants were involved in separate conspiracies to impeach or competently cross-examine the government's witnesses or in the defense's case-in-chief" rendered his assistance ineffective. Am. Mot. 14. This ground is similar to ground three, and the same reasoning applies to a large extent. Mr. Levine's conclusion that the multiple conspiracies defense would be difficult without Defendant's testimony was not unreasonable. Defendant's co-defendants did not testify either. Defendant does not explain how counsel should have presented evidence of multiple conspiracies through his case-in-chief or how it would have succeeded.

As for cross-examination or impeachment of the Government's witnesses, Mr. Levine did cross-examine witnesses at trial based on the defense theory that Defendant's username had been hacked. Trial Tr. 211:17-212:6 (cross-examination of Alexander Ward); 235:10-15 (cross-examination of Michael Evans); 390:3-414:5 (cross-examination of Jason Scalzo); 417:3-418:5 (recross of Scalzo); 492:20-504:16 (cross-examination of Amy Blaser); 692:5-695:19 (cross-examination of Colleen Anderson). A failure to cross-examine a witness about a particular issue has been found to constitute ineffective assistance where there was no credible strategic reason

not to question the witness about that issue. *Reynoso v. Giurbino*, 462 F.3d 1099, 1114 (9th Cir. 2006) (holding that counsel's failure to cross-examine the state's only two eyewitnesses about a reward they stood to receive if the defendant were convicted constituted ineffective assistance where counsel conceded she had not made a strategic decision and the questioning would not have diluted counsel's chosen strategy).

Mr. Levine had a credible strategic reason not to cross-examine the Government's witnesses about separate conspiracies. He chose a defense strategy that focused on whether the Government had proved that Defendant was the person who committed the alleged acts rather than whether those acts were within the scope of the charged conspiracy. Given the evidence, that strategic decision was not unreasonable. Counsel was not deficient, and there is not a reasonable probability that the outcome would have been different if counsel had pursued the alternate strategy.

## IV.    Ground Seven: Jury Instructions

In Ground Seven, Defendant argues that counsel was ineffective for failing to request a jury instruction on a buyer-seller relationship. Am. Mot. 14. The Government correctly counters that no such instruction was required. Gov. Resp. 18. In *United States v. Moe*, the Ninth Circuit held that the district court did not err in refusing to read a buyer-seller instruction to the jury because the instructions on conspiracy fully conveyed the distinction between a buyer-seller relationship and a conspiracy. 781 F.3d 1120, 1128 (9th Cir. 2015). The conspiracy instruction "informed the jury that '[a] conspiracy is a kind of criminal *partnership*' . . . and that, in order to convict, the jury had to 'find that there was a *plan* to commit at least one of the crimes charged in the indictment as an object of the conspiracy.'" *Id.* (emphasis in original).

Judge Aiken instructed the jury that "[a] conspiracy is a kind of criminal partnership, an agreement of two or more persons to commit one or more crimes." Trial Tr. 808:22-24, ECF 330. She also instructed the jury, "You must find that there was a plan to commit at least one of the crimes alleged in the indictment as an object of the conspiracy[.]" *Id.* at 809:7-9. Judge Aiken's instructions are consistent with the instructions approved in *Moe*. Because the buyer-seller instruction was not necessary, Mr. Levine was not deficient in failing to request it.

Defendant also appears to suggest that Mr. Levine was ineffective in failing to request a multiple conspiracy instruction, although the brief is somewhat ambiguous. Def. Br. 24. The Government correctly points out that Mr. Levine requested, and Judge Aiken gave, a multiple conspiracy instruction. Gov. Resp. 19-20 (citing Def. Prop. Jury Instr. 18, ECF 175; Trial Tr. 809:24-810:7; 9th Cir. Model Crim. Jury Instr. 11.3). Counsel was not ineffective with respect to requested jury instructions.

## V.    Grounds Eight Through Twelve: Sentencing

Grounds eight through twelve challenge counsel's performance at sentencing. Am. Mot. 14-15. Grounds eight, nine, and ten address the scope of the conspiracy and the loss calculations. *Id.* Ground eleven challenges counsel's failure to object to the leader/organizer enhancement. *Id.* at 15. And ground twelve renews Defendant's arguments about multiple conspiracies. *Id.*

### A.    Legal Standard

"*Strickland* governs claims for ineffective assistance of counsel in noncapital sentencing proceedings." *Daire v. Lattimore*, 812 F.3d 766, 767 (9th Cir. 2016). Reasonable tactical decisions at sentencing will not constitute ineffective assistance. *E.g.*, *United States v. Stone*, 224 F. App'x 720, 721 (9th Cir. 2007) ("[C]ounsel's tactical decision to seek a departure based only on what he believed was the stronger ground of diminished mental capacity was not objectively

unreasonable."). Only serious lapses will be found to constitute ineffective assistance. *E.g.*,

*Rompilla*, 545 U.S. at 383-84 (holding that counsel performed deficiently at sentencing phase for

failing to even look at defendant's prior conviction file although the prosecution advised it would

be relying on documents contained in the file).

     B.     Analysis

         i.     Ground Eight: Scope of Conspiracy

Defendant argues that counsel was deficient for

> fail[ing] to identify the scope of the conspiracy for purposes of the relevant conduct provisions of the Sentencing Guidelines and fail[ing] to present readily available evidence that the scope of the conspiracy for purposes calculating loss under the Sentencing Guidelines did not extend to returns filed by co-defendants operating independent schemes based on defendant's agreement [to] facilitate their purchasing of stolen identity information.

Am. Mot. 14.

Under the Sentencing Guidelines, the applicable sentencing range depends on the

defendant's relevant conduct, which includes:

> (1)    (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>     (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were—
>         (i)    within the scope of the jointly undertaken criminal activity,
>         (ii)   in furtherance of that criminal activity, and
>         (iii)  reasonably foreseeable in connection with that criminal activity;
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense[.]"

U.S.S.G. §1B1.3(a)(1).[2] The scope of the criminal activity the defendant agreed to jointly

undertake determines the relevant conduct at sentencing. *Id.* cmt. n.3(B). Thus, the defendant

may not be automatically held responsible for losses attributable to the entire conspiracy. *United*

*States v. Treadwell*, 593 F.3d 990, 1002 (9th Cir. 2010), *overruled on other grounds by United*

*States v. Miller*, 953 F.3d 1095 (9th Cir. 2020). "Knowledge of another participant's criminal

acts is not enough to hold the defendant responsible for those acts." *United States v. Lloyd*, 807

F.3d 1128, 1142-43 (9th Cir. 2015) (internal quotations omitted) (holding that defendant was not

responsible at sentencing for co-defendant's actions in telemarketing fraud operation where the

two "did not pool customers, information, or other resources").

 The Sentencing Guidelines tie the recommended sentence for economic crimes such as

theft to the loss associated with the criminal activity. U.S.S.G. §2B1.1. In general, "loss is the

greater of actual loss or intended loss." *Id.* cmt. n.3(A). "'Actual loss' means the reasonably

foreseeable pecuniary harm that resulted from the offense." *Id.* cmt. n.3(A)(i). "'Intended loss'

. . . means the pecuniary harm that the defendant purposely sought to inflict[.]" *Id.* cmt.

n.3(A)(ii).

 In his sentencing memorandum, Mr. Levine challenged the Government's intended loss

figures on the basis that they sought to hold Defendant responsible for losses incurred where co-

defendants received identities from sources other than Defendant. Def. Sent. Mem. 6-7.

Defendant was ultimately held responsible for losses based on fraudulent returns he filed with his

brother Michael or with others, and for fraudulent returns filed by his co-defendants based on PII

Defendant passed to them. Gov. Tr. Ex. 157; Sent. Tr. 92:19-20. Judge Aiken stated that this

---

[2] Defendant was sentenced on June 20, 2018. ECF 293. The 2016 Sentencing Guidelines applied
on that date, and all citations herein are to the 2016 Sentencing Guidelines.

amount was appropriate because it was proven as the intended loss at trial. *Id.* at 92:10-15.

Defendant argues that he should not be held responsible for fraudulent returns filed by his co-defendants because his agreement with his co-defendants ended at the sale of PII to them, so their acts in filing fraudulent returns were beyond the scope of his agreement with them and not in furtherance of the agreement to buy and sell PII. Def. Br. 35-36. The Government counters that the scope of the conspiracy at sentencing is the same as at trial. Gov. Resp. 21. Given the evidence that Defendant was in a conspiracy with his co-defendants that went beyond the sale of PII, Mr. Levine was not deficient in failing to argue that Defendant should not be held responsible for losses traceable to PII he sold to his co-defendants, and even if he had made the argument, there is not a reasonable probability that Defendant would have received a lesser sentence.

    ii.   Ground Nine: Review of Loss Calculations

    Defendant argues that counsel was ineffective due to his "failure to review the information underlying the government's loss calculations, understand those calculations, determine the accuracy of those calculations and raise specific challenges to those calculations at sentencing." Am. Mot. 14. Mr. Levine hired an expert, Jeffrey Cone, to review the Government's loss figures. Def. Set. Mem. Ex. 1. After considerable back-and-forth between defense counsel and counsel for the Government regarding the loss figures, Mr. Cone concluded that the government's figures could not be independently verified. *Id.* He testified to the same at the sentencing hearing. Sent. Tr. 41:2-3. On cross-examination, Mr. Cone conceded that it was not until SA Anderson testified at sentencing that he understood that certain spreadsheets he had already been provided contained the information he sought. *Id.* at 49:5-21. He also stated that

"other information on the tax return that might have been potentially helpful to the defense was not provided." *Id.* at 51:16-17.

Even if Mr. Levine were deficient in its handling of the Government's spreadsheets, Defendant cannot show that he was prejudiced. Judge Aiken used the intended loss figure proven at trial. Sent. Tr. 92:10-20. Defendant points to no evidence undermining the reliability of that figure; he only reiterates his argument that he was not part of the charged conspiracy. Def. Br. 36. In doing so, Defendant challenges two specific amounts in the intended loss calculations. Neither challenge has merit. First, Defendant challenges a $6,472,962 amount "from false returns filed by other individuals using PII 'passed' from" him to others. *Id.* SA Anderson states that this amount "represents the accepted fraudulent tax returns Mr. Kazeem's indicted named co-conspirators filed after receiving the stolen PII directly from Mr. Kazeem." Gov. Resp. Ex. 2 ("Anderson Decl.") ¶ 5(b). Second, Defendant challenges a $6,072,620 amount in "False Returns with Others." Def. Br. 37. He states that "it is not clear based on the information in the spreadsheet why each of these returns was attributed" to him. *Id.* SA Anderson states that this amount "represents the accepted fraudulent tax returns Mr. Kazeem filed with the assistance of other co-conspirators, meaning anyone other than his brother Michael Kazeem and the named co-conspirators in his indictment." Anderson Decl. ¶ 5(a). Defendant concedes that Damilola Francis, who was neither his brother nor a co-defendant, was his co-conspirator and that evidence at trial showed this. Def. Br. 19. The rest of the intended loss figure Judge Aiken relied on covered fraudulent returns Defendant filed with his brother. Anderson Decl. ¶ 5(c). Given the evidence against Defendant at trial and the jury's verdict, there was not a reasonable probability that Judge Aiken would have found that the intended loss attributable to Defendant was less than $26,454,014.

iii.    Ground Ten: Rebuttal of Loss Calculations

Defendant argues that counsel was deficient because he

fail[ed] to adequately rebut the government's intended loss calculation that was ultimately adopted by the Court with evidence identifying the scope of conduct and losses attributable to [Defendant's] jointly undertaken criminal activity and failed to specify or summarize which losses—even if it was reasonably foreseeable to defendant that the stolen identities he provided would be used to file fraudulent refund returns—were attributable to the separate 'joint undertakings' of the other named defendants and not attributable to defendant.

Am. Mot. 15.

The discussion of grounds eight and nine above applies equally to ground ten. Counsel was not deficient in his performance, and Defendant cannot show prejudice.

iv.    Ground Eleven: Leader/Organizer Enhancement

Defendant argues that counsel was deficient for

fail[ing] to object to the presentence report or Court's application of a four-level increase under U.S.S.G. §3B1.1(a) based on defendant's role as a leader or organizer of a criminal activity involving five or more participants on the grounds that there were multiple conspiracies, including and multiple independent stolen identity refund fraud schemes, and while there was evidence supporting a two-level increase based on defendant's role as an organizer or leader in the criminal activities he participated in, the evidence did not establish that he was a leader of a scheme involving five or more participants.

Am. Mot. 15.

The Sentencing Guidelines provide for a four-level upward adjustment "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive[.]" U.S.S.G. §3B1.1(a).

Defendant's argument relies on his assertion that the evidence did not support a finding that he was in a conspiracy with his four co-defendants. Def. Br. 35, 39. Defendant concedes that the evidence showed he was in a conspiracy with his brother Michael Kazeem and Damilola Francis. *Id.* at 35. The Government responds that there is evidence of at least five participants in

the conspiracy, including (1) the four co-defendants, (2) Michael Kazeem and Damilola Francis, and (3) unidentified participants to whom Defendant provided instruction. Gov. Resp. 26. As discussed above, the record supports a finding that Defendant was in a conspiracy with his four co-defendants, and that he was an organizer or leader of that conspiracy.

Mr. Levine states, "strategically, I decided it was more advantageous not to object because of the strength of the evidence to the contrary. In light of the evidence, I believe that objecting would have hurt my credibility." Levine Decl. ¶ 11. He explains: "I believed the better strategy was to have credibility to argue for the downward variance, which was successful, in that the court varied downward from the guidelines by four years." *Id.* This strategy was reasonable. It was reasonable for Mr. Levine to conclude that, rather than arguing against the weight of the evidence from trial, it would be more effective to argue for a downward variance. Judge Aiken told Defendant, "I think you were clearly the leader in this operation[.]" Sent. Tr. 93:18-19. Even if Mr. Levine's decision not to challenge the enhancement were not reasonable, there is not a reasonable probability that the enhancement would not have been imposed if counsel had challenged it.

> v.    Ground Twelve: Multiple Conspiracies Evidence

Defendant argues that counsel was ineffective in "fail[ing] to present evidence showing the existence of multiple conspiracies to rebut or otherwise challenge the allegation that a longer sentence than the sentences of his co-defendants was warranted and proportional because defendant was the 'mastermind' or leader of the alleged conspiracy." Am. Mot. 15. This ground fails for the reasons outlined in discussing grounds eight through eleven. Given the evidence, it was reasonable for Mr. Levine to seek a downward variance rather than challenge Defendant's leadership role or the scope of the conspiracy.

## VI.    Ground Thirteen: Cumulative Errors

Finally, Defendant argues that the cumulative effect of the errors outlined in grounds one through twelve warrants relief. Because the Court has concluded that grounds one through twelve are unavailing, ground thirteen is likewise unavailing. Defendant has not shown prejudice.

## VII.    Hearing Not Required

Because the record conclusively shows that Defendant is not entitled to relief, a hearing is not required. Ground one presents no factual dispute for the Court to resolve. Ground seven fails as a matter of law. The remaining grounds all rely on Defendant's argument that the evidence did not support the finding that he was in a SIRF conspiracy with his co-defendants. But the evidence did support such a finding, so these grounds fail based on a review of the record alone.

## VIII.    Certificate of Appealability

A Certificate of Appealability will issue only if the defendant makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To do so, the defendant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks and citations omitted). The defendant need not make a showing that they will succeed but must prove something more than the absence of frivolity or the mere existence of good faith on their part. *Id.* at 338.

Reasonable jurists would not debate whether the petition should have been resolved differently. The evidence against Defendant was overwhelming, so Defendant cannot show that

he was prejudiced by any of the deficiencies he alleges. Accordingly, the Court denies a certificate of appealability.

## CONCLUSION

Defendant's Motion to Vacate or Correct Sentence [414] and Amended Motion to Vacate or Correct Sentence [437] are DENIED. Because Defendant has not made a "substantial showing of the denial of a constitutional right" as required by 28 U.S.C. § 2253(c)(2), the Court also denies a Certificate of Appealability.

IT IS SO ORDERED.

DATED:_____August 18, 2023_____.


MARCO A. HERNANDEZ
United States District Judge