SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**JUDITH R. HARPER, OSB #903260**
Assistant United States Attorney
Judi.Harper@usdoj.gov
310 West Sixth Street
Medford, OR 97501
Telephone: (541) 776-3564
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No. 1:15-cr-00172-MTK-1** |
| **v.** | **UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S** |
| **EMMANUEL OLUWATOSIN KAZEEM,** | **MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE** |
| **Defendant.** | |

### BACKGROUND

On June 20, 2018, Emmanuel Oluwatosin Kazeem was convicted and sentenced to 15 years after a jury found him guilty of 19 counts including one count of Conspiracy to Commit Mail and Wire Fraud, five counts of Mail Fraud, four counts of Wire Fraud and nine counts of Aggravated Identity Theft. The conspiracy began at least as early as tax year 2012 and continued up until his arrest in May 2015. Kazeem was the leader of the conspiracy. He has been on supervision since 2024. He requests early termination of supervised release. The government as well as probation for the District of Oregon and probation for the District of Maryland oppose this request.

**United States' Response and Opposition to Defendant's**                    **Page  1**
**Motion for Early Termination of Supervised Release**

**FACTS OF UNDERLYING CASE**

Emmanuel Kazeem engaged in a conspiratorial scheme with his brother and multiple co-conspirators to obtain and utilize stolen personally identifiable information (PII) to prepare false federal and state tax returns.   The objective of the scheme was to use the stolen PII from victims to obtain both federal and state tax refunds through the filing of false tax returns in the victims' names.   Kazeem was the leader of the group who purchased the stolen PII from a Vietnamese hacker.

The co-conspirators passed PII of over 200,000 individuals with about half of those identities appearing to have originated from a database belonging to CICS Employment Services (CICS) in Lincoln City, Oregon.   CICS provides pre-employment and volunteer background checks for thousands of clients.   Importantly, this is the same database connected with the identity theft involving the Archdioceses of Oregon and Washington.   The PII that originated from the CICS database were obtained by Kazeem directly from an individual in Vietnam who instructed Kazeem to wire money to him, ostensibly for payment for the information.   Kazeem then passed thousands of the PII directly to 33 other co-conspirator email accounts, including his co-conspirators, some of whom resided outside the US.   A review of some of the stolen identities in the emails revealed the PII of the original tax fraud victims from Medford, Oregon who reported the identity theft to Medford IRS agents, as well as other victims from Oregon.

After the co-defendants acquired victim PII, they engaged in intricate acts that required an in-depth understanding of several IRS systems that they used to verify the victim PII and to obtain IRS taxpayer information for the filing of fraudulent federal tax returns.   They first obtained specific knowledge as to how to acquire a victim's E-file PIN through unauthorized

**United States' Response and Opposition to Defendant's**                                    **Page  2**
**Motion for Early Termination of Supervised Release**

access into the IRS' E-file PIN system.   Some of the co-defendants even learned how to obtain a victim's IRS transcripts through unauthorized access into the IRS' "Get Transcripts" system. Once the co-defendants successfully obtained a victim's IRS Taxpayer information, they used the information to file fraudulent federal tax returns in which they concealed their true identities through the use of sophisticated proxy servers and disposable/fictitious email accounts.   Agents also determined that over 1,600 IRS transcripts were obtained by the first co-defendants and then used to file fraudulent tax returns with the IRS.

In total, Kazeem's group used PII to file fraudulent federal and/or state tax returns seeking over $25 million in fraudulent refunds. Total tax loss figures for accepted federal returns tied to all of the co-conspirators, found through email analysis to have participated in the scheme, were 12,805 returns, with attempted refunds over $113 million and actual losses over $11 million.

## ARGUMENT

"[A] court may terminate a term of supervised release if 'it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.'"   *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014) (quoting 18 U.S.C. § 3583(e)(1)).   "The expansive phrases 'conduct of the defendant' and 'interest of justice' make clear that a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination."   *Id.*

While Kazeem's current compliance on federal supervision is noted, it must be weighed against the extraordinary gravity of the underlying offense.   Kazeem did not merely participate in a scheme; he was the architect of a massive, multi-year criminal enterprise.   This

**United States' Response and Opposition to Defendant's**                                          **Page 3**
**Motion for Early Termination of Supervised Release**

sophisticated operation exploited the personal identifying information (PII) of over 250,000 victims and resulted in the theft of more than $11 million in federal funds.

The sheer volume of victims and the calculated nature of the fraud suggest a level of criminal sophistication that requires a prolonged period of structured oversight to ensure total rehabilitation and public safety.

Also, a significant new factor in this case is the denaturalization complaint filed by the Department of Justice on March 4, 2026.   This ongoing litigation introduces a substantial shift in Kazeem's legal status and personal stability.   The potential loss of citizenship and subsequent immigration consequences create a new set of pressures that could incentivize non-compliance or flight.   Continued supervision is necessary to monitor Kazeem's status as these proceedings unfold, ensuring he remains within the jurisdiction and continues to meet his financial and legal obligations.   Kazeem and his co-defendants still owe over $11 million dollars in restitution.

Supervision serves as the primary mechanism for the collection of the significant restitution owed to the victims of this $11 million scheme.   Furthermore, Kazeem has only been under supervision since December 2024, a period of approximately 15 months. Given that he served only six years of a 15-year sentence due to executive clemency, the full three-year term of supervised release is a necessary and proportionate measure to satisfy the original goals of sentencing: a) just punishment--reflecting the harm done to a quarter-million individuals; b) deterrence--ensuring the sophisticated skills used in the conspiracy are not re-employed; c) protection of the community--maintaining a safety net during a period of significant legal transition.

**CONCLUSION**

The government respectfully opposes the request for early termination of supervised release.

Dated this 30th day of March 2026.

SCOTT E. BRADFORD
United States Attorney

s/ *Judith R. Harper*
JUDITH R. HARPER, OSB #903260
Assistant United States Attorney